UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


CORNELL MCCREARY,

            Plaintiff,

v.                                                      Case No. 2:08-cv-277
                                                        HON. ROBERT HOLMES BELL
RICKY WERTANEN, et al.,

            Defendants.
_____/


## **REPORT AND RECOMMENDATION**

            Plaintiff Cornell McCreary, an inmate currently confined at the Oaks Correctional

Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Resident Unit

Officer Ricky Wertanen, Deputy Warden Linda Tribely, Warden Greg McQuiggin, Assistant

Resident Unit Supervisor Lincoln Marshall, Resident Unit Manager J. LeClaire, Assistant Deputy

Warden J. Larson, Attorney Mike Cox, Baraga County Prosecutor Joseph O'Leary, Mike Healey,

Resident Unit Officer S. Kutchie, Resident Unit Officer K. Truesdale, and Food Service Director M.

Berry[1].

            Plaintiff's complaint alleges that Defendants violated his rights under the First and

Fourteenth Amendments by failing to protect him from harm by members of a group designated as

a security threat group (STG).  Plaintiff alleges that on August 20, 2006, Defendant Healey pulled

Plaintiff out of his cell to be taken to the yard.  Plaintiff states that Defendant Healey said,

"Shakedown big man," and squeezed Plaintiff's buttocks while he was conducting a pat down of

_____

            [1]Also known as Herbert D. Barry.

Plaintiff. Plaintiff asserts that the MDOC failed to seek charges against Defendant Healey for this conduct.

Plaintiff contends that on October 21, 2006, Defendant McQuiggin refused Plaintiff's request for an investigation by the State Police regarding an incident in which another prisoner threw feces on Plaintiff. Plaintiff states that he was also denied health care and medication following the incident. Plaintiff alleges that on December 13, 2006, Defendant Marshall, Tribley and McQuiggin failed to allow Plaintiff to shower alone or otherwise provide for his safety from urine and feces while showering. Plaintiff claims that on January 11, 2007, and March 2, 2007, Defendants Marshall and Tribley were given notice that Plaintiff needed protection from a STG called the Melanics. Plaintiff states that on February 9, 2007, Defendant McQuiggin was aware that Plaintiff had been assaulted by a prisoner in the shower with feces and that the prisoner called Plaintiff a "rat." Plaintiff contends that he wrote to Defendants Tribley and McQuiggin on June 25, 2007, and notified them that he had lost 40 pounds because staff had been starving him by providing him with extra small portions of food.

Plaintiff alleges that on September 29, 2007, while being taken to the yard, Defendant Kutchie pulled Plaintiff from his cell and patted him down. Plaintiff asserts that during the pat down, Defendant Kutchie grabbed and squeezed Plaintiff's penis and said that it felt like "chapstick." Plaintiff requested criminal charges be filed, but Defendants Marshall, LeClaire, and Tribley failed to contact the police.

Plaintiff alleges that on June 27, 2007, Defendant Wertanen asked Plaintiff if he wanted to go to the general population, knowing that prisoner Jett #337538 would be there. Defendant Wertanen knew that Jett wished to harm Plaintiff. Plaintiff also states that on December 19, 2007, January 4, 2008, and January 30, 2008, Defendants Marshall, LeClaire, Tribley,

and McQuiggin failed to separate the yard cages, placing Plaintiff in danger of other prisoners throwing feces and urine on him. Plaintiff claims that on January 28, 2008, February 12, 2008, and March 4, 2008, Defendants Marshall, LeClaire, Wertanen, and McQuiggin were made aware of the conflict between Plaintiff and Melanic gang member prisoner Jett #337538, when Plaintiff filed a grievance indicating that prisoner Jett had threatened to stab him. On May 21, 2008, while in the presence of the entire wing, Defendant Marshall called Plaintiff a "rat" and accused him of sending kites to the Deputy.

On June 27, 2008, Defendants Marshall, Larson, and Wertanen were on the Security Classification Committee (SCC) and noted that there was a conflict between Plaintiff and prisoner Jett. However, Defendants Marshall, Larson, and Wertanen nonetheless released Plaintiff to the general population. On June 30, 2008, Jett threatened to stab Plaintiff if he did not pay him to stay on the yard. Staff were notified and Plaintiff was placed on protection for his own safety. On July 3, 2008, Plaintiff filed a grievance on Defendant Tribley and others. Defendant Tribley subsequently denied Plaintiff the right to protective custody in retaliation for Plaintiff's use of the grievance procedure.

Plaintiff states that prisoner Jett and other Melanic gang members attacked an unknown prisoner and the female officer who tried to stop the fight on August 4, 2008. Plaintiff alleges that on various dates from 2005 to 2009, he attempted to contact Defendant Cox seeking prosecution of other inmates and various employees of the MDOC. Plaintiff claims that Defendant Cox declined to prosecute these individuals and has failed to protect Plaintiff. Plaintiff seeks injunctive and declaratory relief, as well as damages.

Presently before the Court are Defendants' Motions to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and/or for Summary Judgment, pursuant to Fed. R. Civ. P. 56 (docket ##48, 76, and

133.)  In addition, Plaintiff has filed numerous motions pursuing a decision in his favor as asserted in his original complaint (docket ##67, 70, 80, 86, 93, 117, 119-122, 124, 145 and 148).  Plaintiff has filed responses and/or the time for filing such responses has elapsed and the matter is ready for decision.  Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply.  *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.  *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants initially assert that they are entitled to dismissal because Plaintiff failed to exhaust his administrative remedies. A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532

(2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[2], sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

---

[2]The MDOC amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.*

In addition, the grievance policy provides that, where the grievance alleges staff brutality or corruption, the grievance may be submitted directly to Step III. *Id.* at ¶S. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.*

Defendants state that Plaintiff never filed any grievances related to his allegations against Defendant Cox. Plaintiff responds that he is not required to file a grievance on Defendant Cox because he is not an employee or agent of the MDOC. In the opinion of the undersigned, Plaintiff is correct. However, the undersigned recommends that Plaintiff's claims against Defendant Cox be dismissed for lack of merit. The right Plaintiff alleges was violated in this case is his right to have his claims investigated and prosecuted by Defendant Cox. However, no such right exists.

*White v. City of Toledo*, 217 F. Supp. 2d 838, 841 (N.D. Ohio, Sept. 18, 2002); *Langworthy v. Dean*, 37 F. Supp. 2d 417, 422 (D. Maryland, Feb. 8, 1999) (both citing *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 195, 109 S. Ct. 998 (1989)). "No federal appellate court, including the Supreme Court . . . has recognized that there is a federally enforceable right for the victim [of a crime] to have criminal charges investigated at all." *White*, 217 F. Supp. 2d at 841-42; *Langworthy*, 37 F. Supp. 2d at 422. The conclusion that such a right does not exist is supported by the fact that there is no federally protected right to compel the prosecution of a criminal activity. *Diamond v. Charles*, 476 U.S. 54, 63, 106 S. Ct. 1697, 1704 (1986); *Linda R. S. v. Richard D.*, 410 U.S. 614, 619, 93 S. Ct. 1146, 1149 (1973); *Associated Builders & Contractors v. Perry*, 16 F.3d 688, 691-92 (6th Cir. 1994). Therefore, because Plaintiff has not shown the deprivation of a federally protected right, his claims against Defendant Cox are properly dismissed.

Defendants also contend that Plaintiff did not exhaust his claim that he was denied health care and medication following the October 21, 2006, assault with feces by another prisoner. Defendants state that Plaintiff filed grievance No. AMF 06-11-3728-12D3 regarding the alleged denial, but state that the grievance does not specifically name any of the Defendants. A review of the grievance, which is attached to Defendants' motion, reveals that they are correct. (Defendants' Exhibit D.) Moreover, Plaintiff concedes that he did not properly exhaust this claim. Therefore, Plaintiff's claim that he was denied health care and medication following the October 21, 2006, assault with feces is properly dismissed for lack of exhaustion.

Defendants claim that Plaintiff failed to exhaust his claim that Defendant Marshall refused to allow Plaintiff to shower alone on December 13, 2006. Plaintiff filed grievance No. AMF 06-12-4329-03F regarding the December 13, 2006, denial of his request to shower alone by Defendants Tribley and McQuiggin on December 16, 2006. (Defendants' Exhibit F.) Defendant

Marshall was the step I respondent to this grievance, and it does not appear that Plaintiff ever filed a separate grievance asserting the alleged bias of Defendant Marshall in responding to Plaintiff's grievance. In order to properly exhaust Michigan Department of Corrections grievance procedures, a prisoner must raise each of his claims for the first time at Step I. *Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003). However, where a prisoner has set forth a claim in his Step I grievance, he may present additional factual detail at Steps II and III that clarify his allegations at Step I, as a means of justifying his appeal. *Id.* Raising allegations against a particular defendant for the first time at Step II or III is insufficient to demonstrate exhaustion. *Id.* at 576 n.4. Therefore, Plaintiff's claim against Defendant Marshall regarding the December 13, 2006, denial of his request to shower alone is properly dismissed for failure to exhaust administrative remedies.

Defendants state that Plaintiff failed to properly exhaust his claims that Defendants Marshall and Tribley failed to grant him protective custody on January 11, 2007, and March 2, 2007, because he did not file a step III grievance regarding these claims. Plaintiff concedes that he failed to do so, asserting that these incidents were only included in his complaint to show that Defendants Marshall and Tribley had knowledge of the situation. Therefore, the undersigned recommends dismissal of these claims for failure to exhaust administrative remedies.

With regard to the claim that Defendant McQuiggin was made aware of the fact that Plaintiff had been labeled a "rat" on February 9, 2007, but failed to protect him, Plaintiff concedes that he did not file a step III grievance regarding this claim, asserting that this incident was only included in his complaint to show that Defendant McQuiggin had knowledge of the situation. Therefore, the undersigned recommends dismissal of these claims for failure to exhaust administrative remedies.

With regard to the claim that Plaintiff notified Defendant Tribley of his alleged weight loss on June 25, 2007, Plaintiff concedes that he did not exhaust this claim. Therefore, the undersigned recommends dismissal of this claim for failure to exhaust administrative remedies.

Defendants state that Plaintiff's claim that Defendant Kutchie sexually assaulted him while patting him down on September 29, 2007, and that Defendants Marshall, LeClaire and Tribley failed to contact the police regarding this incident should be dismissed because Plaintiff's grievance on this matter was untimely. The undersigned reviewed the grievance, responses and appeals, which are attached to Defendants' brief as Exhibit H, and it appears that Plaintiff's grievance was addressed on the merits at steps I and II, but that at step III, it was noted that the grievance was untimely. (Defendants' Exhibit H.) Because the grievance was not rejected and the merits of the grievance were addressed, Defendants are not entitled to dismissal of these claims.

Plaintiff concedes that his claim against Defendant LeClaire regarding the alleged refusal to provide separate yard modules on December 16, 2007, should be dismissed for lack of exhaustion. Defendants state that Defendant Marshall is also entitled to dismissal on this claim because Plaintiff failed to mention him at step I of his grievance. Plaintiff did name Defendant Marshall at step II, but as noted above, raising allegations against a particular defendant for the first time at Step II or III is insufficient to demonstrate exhaustion. *Id.* at 576 n.4. Therefore, Plaintiff's claim against Defendant Marshall regarding the December 16, 2007, refusal to provide separate yard modules is properly dismissed for failure to exhaust administrative remedies.

Finally, Defendants assert that Plaintiff failed to name Defendants McQuiggin, Tribley or LeClaire in his step I grievance regarding the alleged January 28, 2008, February 12, 2008, and March 4, 2008, failures to protect Plaintiff from prisoner Jett. As noted above, in order to properly exhaust Michigan Department of Corrections grievance procedures, a prisoner must raise

each of his claims for the first time at Step I. *Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003). Therefore, in the opinion of the undersigned, Defendants McQuiggin, Tribley and LeClaire are entitled to dismissal of these claims for lack of exhaustion.

Defendants McQuiggin, Kutchie, Cox, LeClaire, Tribley, Larson, Marshall, Wertanen, and Healey also state that they are entitled to summary judgment on Plaintiff's Eighth Amendment failure to protect claims because they were not deliberately indifferent to a serious risk to Plaintiff's safety. Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). To establish a violation of this right, Plaintiff must show that Defendant was deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir.1990); *McGhee v. Foltz*, 852 F.2d 876, 880-881 (6th Cir.1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242-43 (6th Cir.1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.")

Defendants note that with regard to the alleged sexual assaults and the feces throwing incident, Plaintiff alleged that he informed Defendants of these alleged events after the fact, and that they failed to protect him. Defendants state that they cannot be expected to protect Plaintiff from spontaneous occurrences of which they have no prior knowledge. With regard to the claims regarding prisoner Jett, Defendants note that it was actually Plaintiff who was charged with assault on January 28, 2008, when he attempted to spit on Jett, but instead struck escorting staff. Plaintiff

was found guilty of this charge. (Defendants' Exhibit A, attachment 1.) In addition, Defendants state that on June 27, 2008, Plaintiff signed a declaration stating that when released to general population, he had no conflict with prisoner Jett. (Defendants Exhibit A, attachment 2, Exhibit E, ¶ 4.) Defendants Larson, Marshall and LeClaire attest that they thoroughly investigated Plaintiff's claims that he was in danger from prisoner Jett, and that they were found to be without merit. In addition, Defendants attest that Plaintiff antagonizes and argues with numerous prisoners, then claims that he is in fear of his safety from those prisoners and claims that staff is failing to protect him. (Defendants' Exhibits A, B, and C.)

In addition, the step I response to grievance No. AMF 07-12-0448-117A, notes that it was actually Plaintiff who loudly stated that he had written a "bogus kite" on another prisoner because Defendant Marshall kept stealing the prisoners' fishlines. The response states that this information would have remained confidential if Plaintiff had not loudly proclaimed that he had written the kite. (Defendants' Exhibit B, Attachments 3 and 4.) Finally, Defendants note that Plaintiff has a history of being difficult to manage and that he has received 117 major misconduct tickets. In addition, Plaintiff has been found guilty of spitting on another prisoner in the yard modules and of attempting to take a bottle of urine into the yard module. (Defendants' Exhibit A, pp. 6-13.)

As noted above, Plaintiff has failed to show that Defendants were made aware of a substantial risk of harm prior to the alleged assaults. Rather, Plaintiff states that he informed them of the alleged threat after he had already been assaulted. In the opinion of the undersigned, Defendants McQuiggin, Kutchie, Cox, LeClaire, Tribley, Larson, Marshall, Wertanen, and Healey have succeeded in showing that they are entitled to summary judgment on Plaintiff's Eighth

Amendment failure to protect claims because they were not deliberately indifferent to a serious risk to Plaintiff's safety.

Defendant Kutchie claims that he is entitled to summary judgment on the September 29, 2007, sexual assault claim. "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoted cases omitted). "To prevail on a constitutional claim of sexual harassment, an inmate must therefore prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." *Freitas*, 109 F.3d at 1338 (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

Circuit courts consistently have held that sexual harassment, absent contact or touching, does not satisfy the objective requirement because such conduct does not constitute the unnecessary and wanton infliction of pain. *See Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (allegations that county jailer subjected female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); *Howard v. Everett*, No. 99-1277EA, 2000 WL 268493, at *1 (8th Cir. March 10, 2000) (sexual comments and gestures by prison guards did not constitute unnecessary and wanton infliction of pain); *cf. Seltzer-Bey v. Delo*, 66 F.3d 961, 962-63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexual comments about prisoner's

penis and buttocks, and rubbed prisoner's buttocks with nightstick were sufficient to withstand motion for summary judgment); *Zander v. McGinnis*, No. 97-1484, 1998 WL 384625, at *2 (6th Cir. June 19, 1998) (verbal abuse of mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) (magistrate judge correctly held that verbal abuse in the form of offensive remarks regarding a transsexual prisoner's bodily appearance, transsexualism, and presumed sexual preference cannot state an Eighth Amendment claim). Other courts have held that even minor, isolated incidents of sexual touching coupled with occasional offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See, e.g., Jackson v. Madery,* 158 F. App'x 656, 661 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X v. Harris,* 437 F.3d 1107, 1111 (11th Cir. 2006); *Boddie v. Schneider*, 105 F.3d 857, 859-61 (2d Cir. 1997) (court dismissed as inadequate prisoner's claim that female corrections officer made a pass at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pressed against his private parts).

In the opinion of the undersigned, Plaintiff's claim that Defendant Kutchie squeezed his penis and made a rude remark on one occasion, if true, while reprehensible, does not rise to the level of an Eighth Amendment violation. As noted above, isolated incidents of sexual touching

coupled with occasional offensive sexual remarks do not rise to the level of an Eighth Amendment violation.

Defendants McQuiggin, Kutchie, Cox, LeClaire, Tribley, Larson, Marshall, Wertanen, and Healey state that although Plaintiff asserts a violation of his Fourteenth Amendment rights, he fails to state exactly how these rights were violated. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir.1996) (citing *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986)); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir.1985); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000). Therefore, Defendants McQuiggin, Kutchie, Cox, LeClaire, Tribley, Larson, Marshall, Wertanen, and Healey are entitled to dismissal of Plaintiff's claims under the Fourteenth Amendment.

Defendants Truesdell and Barry have also filed a motion for summary judgment. With regard to Defendants Truesdell and Barry, Plaintiff alleges that he has lost 31 pounds since his transfer to the Baraga Maximum Correctional Facility (AMF) and that he is being starved due to a lack of proper calories.

Defendants Truesdell and Barry state that they are entitled to summary judgment on Plaintiff's Eighth Amendment claims. With regard to Defendants Truesdell and Barry, Plaintiff asserts that on July 10, 2007, he received a food tray that was stained with tomato sauce and that this occurred again on August 24, 2007. When Plaintiff brought this to the attention of Defendant Truesdell, he was provided with another tray. Plaintiff alleges that the replacement tray was also stained. However, in his affidavit, Defendant Truesdell attests that he inspected the tray, but did not observe any stains. (Exhibit A to Defendants Truesdell and Barry's motion for summary judgment, ¶¶ 4-5.) Plaintiff claims that on August 26, 2007, Defendant Truesdell gave him a stained tray and

refused to provide him with a replacement.  However, in his affidavit, Defendant Truesdell attests that he did not observe any stains on the food tray and that he would have given Plaintiff a replacement if there had been any stains.  (Exhibit A to Defendants Truesdell and Barry's motion for summary judgment, ¶ 6.)  Plaintiff also alleges that on November 24, 2007, he received a dirty tray with tomato stains and dried oatmeal on it and was forced to eat from this tray.

In his affidavit, Defendant Barry attests that Plaintiff was interviewed on at least three occasions regarding stained food trays and was informed that all trays are washed and sanitized pursuant to MDOC policy.  (Exhibit B to Defendants Truesdell and Barry's motion for summary judgment, ¶ 5.)  As part of the daily sanitation and safety requirements, all food service areas are inspected each shift, and the dishwashing machine is included in this inspection.  Because there are two food service shifts, the dishwasher machine and other equipment are inspected twice each day.  (Exhibit B to Defendants Truesdell and Barry's motion for summary judgment, ¶¶ 6-8.)  An annual inspection by Registered Sanitarian Michael Kirkwood reported that the dishwashing machine temperature was 150 degrees, rinse temperature was 160 degrees, and that the final rinse temperature was 190 degrees.  The sanitarian also noted sufficient sanitizer concentrations.  (Exhibit B to Defendants Truesdell and Barry's motion for summary judgment, ¶¶ 11-12, and Attachment 3.)  Plaintiff never reported becoming ill as the result of using a food tray which he claimed was soiled or stained.  (Exhibit B to Defendants Truesdell and Barry's motion for summary judgment, ¶ 14.)

Finally, Defendants Truesdell and Barry refer to Defendant Tribley's affidavit, in which she attests that Plaintiff was receiving 2900 calories per day, had a healthy body mass index based on height and weight.  (Exhibit C to Defendants Truesdell and Barry's motion for summary judgment, ¶ 7.)  The most recent guidelines published by the United States Department of

Agriculture recommend a 2000 calorie daily intake. (Exhibit D to Defendants Truesdell and Barry's motion for summary judgment.)

As noted above, the Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In the opinion of the undersigned, Defendants Truesdell and Barry have succeeded in showing that they did not act with deliberate indifference unnecessarily and wantonly deprive Plaintiff of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *Wilson*, 148 F.3d at 600-01. Therefore, Defendants Truesdell and Barry are entitled to summary judgment on this claim.

Defendants Barry, McQuiggin, Tribley, Marshall and LeClaire contend that they are entitled to summary judgment because they were not personally involved in the underlying misconduct. Plaintiff claims that Defendants Barry, McQuiggin, Tribley, Marshall and LeClaire were aware of various dangers to him through his use of the grievance procedure.

Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932

F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Barry, McQuiggin, Tribley, Marshall and LeClaire were personally involved in the activity which forms the basis of his claim. The only roles that Defendants Barry, McQuiggin, Tribley, Marshall and LeClaire had in this action involve the denial of administrative grievances or the failure to act. Defendants Barry, McQuiggin, Tribley, Marshall and LeClaire cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724 (2000). Accordingly, the Court concludes that Defendants Barry, McQuiggin, Tribley, Marshall and LeClaire are entitled to summary judgment in this case for lack of personal involvement.

Defendants contend that they are entitled to summary judgment on Plaintiff's official capacity claims against them because such claims are barred by the Eleventh Amendment. Any claims against the individually-named Defendants in their official capacities do not state a claim upon which relief can be granted. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, **1 (6th Cir. Sept. 21, 1995) (unpublished). Moreover, the Eleventh Amendment bars suit against the State or one of its agencies in federal court unless the state has given express consent, regardless of the relief sought. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), overruled in part on other grounds, *Will*, 491 U.S. 58;

*Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (State and Board of Corrections).[3]   The State of

Michigan has not consented to civil rights suits in the federal courts.  *See Abick v. Michigan*, 803

F.2d 874, 877 (6th Cir. 1986).  The Eleventh Amendment therefore bars official-capacity suits for

damages against its employees.  Therefore, any official capacity claims are properly dismissed.

        Defendants also claim that Plaintiff's individual capacity claims are barred by

qualified immunity because Plaintiff has failed to show a violation of clearly established law.

Government officials, performing discretionary functions, generally are shielded from liability for

civil damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known.  *Dietrich v. Burrows*, 167 F.3d 1007, 1012

(6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157,

160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An "objective reasonableness"

test is used to determine whether the official could reasonably have believed his conduct was lawful.

*Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).  "Qualified immunity

balances two important interests-the need to hold public officials accountable when they exercise

power irresponsibly and the need to shield officials from harassment, distraction, and liability when

they perform their duties reasonably."  *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

        In making a qualified immunity determination the court must decide whether the facts

as alleged or shown make out a constitutional violation or whether the right that was allegedly

violated was a clearly established right at the time of the alleged misconduct.  *Id.* at 816.  If the court

can conclude that either no constitutional violation occurred or that the right was not clearly

---

    [3]     The Sixth Circuit has held that since an official capacity suit for retroactive relief, such as
monetary damages, is deemed to be against the State, whose officers are the nominal Defendants,
the claim is barred by the Eleventh Amendment.  *Doe v. Wigginton*, 21 F.3d 733, 736-737 (6th Cir.
1994).

established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As previously discussed, because Plaintiff cannot establish that his constitutional rights were violated, Defendants are entitled to qualified immunity.

In summary, in the opinion of the undersigned, Defendants' motion to dismiss for lack of exhaustion (docket #48) is properly denied as to Plaintiff's claims regarding the alleged sexual assault by Defendant Kutchie and Plaintiff's claims against Defendant Cox, and granted as to Plaintiff's claims regarding the alleged denial of health care, Plaintiff's claim against Defendant Marshall regarding the December 13, 2006, claim regarding showers, the January 11, 2007, and March 2, 2007, claims against Defendants Marshall and Tribley for failing to place Plaintiff in protective custody, the February 9, 2007 "rat" incident as to Defendant McQuiggin, the June 25, 2007, weight loss claim against Defendant Tribley, the December 16, 2007, yard module claim against Defendants LeClaire and Marshall, and the January 28, 2008, incident against Defendants Tribley, LeClaire, and McQuiggin.

The undersigned concludes, however, that Plaintiff has failed to sustain his burden of proof in response to Defendants' motions for summary judgment. Accordingly, it is recommended that Defendant's motions for summary judgment (docket #76 and #133) be granted and that this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, Plaintiff's pending motions (docket ##67, 70, 80, 86, 93, 117, 119-122, 124, 145 and 148) are properly denied as moot.

Finally, should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motions for summary

judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: February 10, 2010